IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Newport News Division)

| | | |
|---|---|---|
| DONNA M. HARRAH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:12-cv-00027-RAJ-TEM |
| | ) | |
| CITICORP CREDIT SERVICES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION

## I.   INTRODUCTION

In this putative class action, Plaintiff Donna Harrah ("Plaintiff") alleges that Defendant Citicorp Credit Services, Inc. ("CCSI") decreased the credit line on Plaintiff's credit card account.  Plaintiff maintains that the adverse action notice she admittedly received in connection with this decrease was insufficient under the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* ("ECOA").  Complaint, ¶¶ 5-8.  Regardless of the merits of this claim (or lack thereof), Plaintiff's claim is clearly subject to the arbitration agreement ("Arbitration Agreement") contained in the terms and conditions governing the credit card account at issue.  *See* Declaration of Cathleen Walters ("Walters Decl."), ¶¶ 10-21, Exhibits ("Ex") 1-9.  As amply demonstrated below, the Arbitration Agreement is a valid and enforceable agreement to arbitrate under both the Federal Arbitration Act, 9 U.S.C. § 1 ("FAA"), and South Dakota law (which applies here pursuant to a choice-of-law provision in the terms and conditions of the Arbitration Agreement), completely encompasses the claims at issue, and expressly requires that Plaintiff's claims be arbitrated on an individual basis.

Over the last two years, the United States Supreme Court has issued several decisions confirming that the FAA, which applies here, "reflects an 'emphatic federal policy in favor of

1

arbitral dispute resolution'"[1] and that the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"[2]  Indeed, the decision in *AT&T Mobility v. Concepcion* ("*Concepcion*") establishes that arbitration agreements requiring arbitration on an individual basis must be enforced as written because the FAA prohibits states from "conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures." *Concepcion*, 131 S. Ct. at 1744.  Furthermore, the recent decision in *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012), confirms that, when a statutory scheme is silent on whether claims brought pursuant to such scheme can proceed in an arbitrable forum, "the FAA requires the arbitration agreement to be enforced according to its terms." *Id.* at 673.

Moreover, numerous courts across the country, including this Court, have granted motions to compel arbitration based on the very same Citibank Arbitration Agreement presented in this case. *See Garrett v. Margolis, Pritzker, Epstein, & Blatt, P.A.*, 3:11-cv-00298, slip. op. [Doc. 55.] (E.D. Va. Mar. 28, 2012) ("*Garrett*");[3] *see also infra*, p. 9.  The result should be no different here.  Accordingly, the Motion should be granted, and this dispute submitted to arbitration on an individual basis pursuant to the parties' arbitration agreement.

## II.   STATEMENT OF FACTS

Plaintiff maintains that CCSI supposedly did not provide a sufficient adverse action notice to Plaintiff when the credit line on Plaintiff's credit card account (the "Account") was decreased in April 2010.  Complaint, ¶¶ 5-7.  Actually, Citibank, N.A, a national bank located in Sioux Falls, South Dakota, is the issuer of Plaintiff's Account ("Citibank"); CCSI, a subsidiary

---

[1]  *KPMG LLP v. Cocchi*, 132 S.Ct. 23, 25, 181 L.Ed.2d 323, (Nov. 7, 2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985))

[2]  *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1748 (2011); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1774 (2010) (confirming that "[u]nderscoring the consensual nature of private dispute resolution" is the notion that "parties are 'generally free to structure their arbitration agreements as they see fit.'") (citations omitted).

[3]  A copy of this decision is included in CCSI's Appendix of Authorities.

of Citibank, services the mailing of credit cards and card agreements. Walters Decl., ¶¶ 2, 5.[4] Citibank is the issuer of the Account. *Id.* ¶ 5.

Plaintiff's Account, like any other credit card account, is subject to written terms and conditions as reflected in the Citibank Card Agreement, as amended from time to time ("Card Agreement"). Walters Decl., ¶ 10, Ex. 1. The Card Agreement governing the Account expressly provides that "[t]he terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located." *Id.* ¶ 10, Ex 1 (at p. 9).[5] In addition, the Card Agreement for the Account expressly authorizes Citibank to change the terms of the Agreements, including by adding terms, which changes are binding on the cardmembers. *Id.* Ex. 1 (at p.10).

As detailed in the Walters Declaration, in October 2001, Citibank mailed to its cardmembers, including Plaintiff, a "Notice of Change in Terms Regarding Binding Arbitration to Your Citibank Card Agreement" (the "Arbitration Change-in-Terms"). Walters Decl., ¶¶ 5-12, Ex. 3. The Arbitration Change-in-Terms added the Arbitration Agreement to the Card Agreement. *Id.* The Arbitration Agreement provides that either party can elect mandatory binding arbitration as follows:

> **ARBITRATION**
> ***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.***
> **IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY**
> **BINDING ARBITRATION.   ARBITRATION REPLACES THE RIGHT**
> **TO GO TO COURT, INCLUDING *THE RIGHT TO A JURY AND THE***
> ***RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR***
> ***PROCEEDING.*  IN ARBITRATION, A DISPUTE IS RESOLVED BY AN**
> **ARBITRATOR INSTEAD OF A JUDGE OR JURY.   ARBITRATION**

---

[4] Prior to July 1, 2011, Citi branded credit cards were issued by Citibank (South Dakota), N.A.; effective July 1, 2011, Citibank (South Dakota), N.A merged into Citibank, N.A. Walters Decl., ¶ 2. Citibank is a national bank located in Sioux Falls, South Dakota. *Id.* Prior to its merger with Citibank, N.A., Citibank (South Dakota), N.A., also was a national bank located in Sioux Falls, South Dakota. *Id.* Although CCSI is an affiliated company of Citibank, it does not issue or own credit card accounts. *Id.*

[5] Cites to page numbers for Exhibits refer to the page number of the document being referenced – *e.g.*, page 9 of the Card Agreement.

**PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**

**Agreement to Arbitrate:**
Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

***Claims Covered***
• **What Claims are subject to arbitration?**  All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision.  All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek.  This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims.  A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party.  Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

• **Whose Claims are subject to arbitration?**  Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant, authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir assignee, or trustee in bankruptcy.

*       *       *

• **Broadest Interpretation.**  Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.  This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

*       *       *

• **Who can be a party?**  Claims must be brought in the name of an individual party or entity and must proceed on an individual (non-class, non-representative) basis.  The arbitrator will not award relief for or against anyone who is not a party.  If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. . . .

4

(Walters Decl., Ex. 3 (bolding in original, underlining added).)

As noted, and critically here, the Arbitration Agreement includes specific language (underlined above) that requires that any arbitration may resolve only individual claims. The Arbitration Agreement also includes terms: (i) excluding small claims court actions; (ii) allowing for the parties to choose between nationally recognized arbitration firms, including the American Arbitration Association; and (iii) allowing for the reimbursement and/or advancement of arbitration fees. (*Id.*)

When Citibank mailed the Arbitration Change-in-Terms to the Plaintiff, it alerted Plaintiff as to the Arbitration Agreement by including the following special message (in all capital letters) on the first page of the October 2001 billing statements for the Account:

> PLEASE SEE THE ENCLOSED CHANGE IN TERMS NOTICE FOR IMPORTANT INFORMATION ABOUT THE BINDING ARBITRATION PROVISION WE ARE ADDING TO YOUR CITIBANK CARD AGREEMENT.

Walters Decl., ¶ 12, Ex. 4 (at p. 1).  Citibank followed up that message with another special message (again in all caps) printed in Plaintiff's November 2001 billing statement for the Account, again alerting her to the Arbitration Change-in-Terms:

> WITHIN THE LAST 30 DAYS YOU SHOULD HAVE RECEIVED AN IMPORTANT NOTICE ABOUT ADDING BINDING ARBITRATION TO YOUR CITIBANK CARD AGREEMENT.   IF YOU WOULD LIKE ANOTHER COPY PLEASE CALL THE CUSTOMER SERVICE NUMBER LISTED ABOVE.

*Id.* ¶ 13, Ex. 5 (at p. 1).  The Arbitration Change-in-Terms also provided that the Arbitration Agreement would become effective on the day after the Statement/Closing date indicated on Plaintiff's respective November 2001 billing statement.  *Id.* ¶ 19 Ex. 3 (at p. 1).  The Statement/Closing date was November 15, 2001.  *Id.* ¶ 19 Ex. 5 (at p. 1) (reflecting November 15, 2001 closing date).  The Arbitration Agreement thus became effective on November 16, 2001.  *Id.* ¶ 19.  Plaintiff continued to use the Account after the effective date.  *Id.* ¶ 19.

Importantly, the Arbitration Change-in-Terms gave Plaintiff– like all other recipients of

the Arbitration Change-in-Terms – the choice to opt out of the Arbitration Agreement:

> If you do not wish to accept the binding arbitration provision contained in this change in terms notice, you must notify us in writing within 26 days after the Statement/Closing date indicated on your November 2001 billing statement stating your non acceptance.... If you notify us by that time that you do not accept the binding arbitration provisions contained in this change in terms notice, you can continue to use your card(s) under your existing terms until the end of your current membership year or the expiration date on your card(s), whichever is later. At that time your account will be closed and you will be able to pay off your remaining balance under your existing terms.

Walters Decl., ¶ 16, Ex. 3 (at p. 5). Plaintiff did not choose to opt out of the Arbitration Agreement. *Id.* ¶¶ 17-21, Exs. 7-9.

In February 2005, Citibank mailed another change-in-terms notice to Plaintiff, which made additional amendments to the Arbitration Agreement, including the removal of one of the arbitration firms and a change to the severability provision. *Id.* ¶ 20, Exs. 8-9. Plaintiff also had the opportunity to opt out of these changes, but did not do so. *Id.* Instead, Plaintiff continued using her Account, which remains open and active. *Id.* ¶ 21.

Plaintiff contends in her Complaint, without any explanation, that the statement of reason set forth on the adverse action letter received by Plaintiff in connection with the credit line decrease is "incorrect and inadequate." Complaint, ¶ 8. Pursuant to 15 U.S.C. § 1691e, Plaintiff seeks damages, punitive damages of $10,000 per ECOA violation, and attorneys' fees and costs. While CCSI denies Plaintiff's claim, it is clear that this claim relates to Plaintiff's Account and her relationship with Citibank and, therefore, is subject to the Arbitration Agreement. In addition, pursuant to the Arbitration Agreement, CCSI will agree to pay for Plaintiff's portion of the arbitration fees for individual consumer arbitration before the American Arbitration Association ("AAA").

III.   **ARGUMENT**

    A.    **Plaintiff's Claims Are Subject To Binding Arbitration Pursuant To The Arbitration Agreement Governing The Account And Settled Authority.**

        1.    **Under The FAA, Arbitration Must Be Compelled Pursuant To The Express Terms Of The Arbitration Agreement.**

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."). The United States Supreme Court has made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *See, e.g., Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967).[6]

The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Perry v. Thomas*, 482 U.S. 483, 490-91(1987) (stating that arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'" (citations omitted)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *see also Perry*, 482 U.S. at 490 (stating that arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'") (citations omitted). Indeed, as recently confirmed by the Supreme Court, the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to

---

[6] There is no question that the FAA applies to this dispute because the credit card account at issue was made between Plaintiff, a resident of Virginia, and Citibank, a national banking association located in Sioux Falls, South Dakota. Walters Decl., ¶ 2. Indeed, the Arbitration Agreement explicitly states that "[t]his arbitration provision is governed by the [FAA]." (*See id.*, Ex. 3 (under the heading "Broadest Interpretation").

their terms.'" *Concepcion*, 131 S. Ct. at 1748; *accord Stolt-Nielsen*, 130 S. Ct. at 1773; *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995).

Quite simply, the "overarching purpose of the FAA, evident in the text of §§ 2, 3 and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 131 S. Ct. at 1748. By consenting to bilateral arbitration, the "parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution:  lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen*, 130 S. Ct. at 1775 (citations omitted).

"Underscoring the consensual nature of private dispute resolution . . . parties are 'generally free to structure their arbitration agreements as they see fit.'" *Stolt-Nielsen*, 130 S. Ct. at 1774 (citations omitted). Thus, "parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit *with whom* a party will arbitrate its disputes." *Concepcion*, 131 S. Ct. at 1748-49 (emphasis added) (citations omitted). Indeed, the "point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute . . . . And the informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of dispute resolution." *Id.* at 1749. Ultimately, "[i]t falls to courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise:  to give effect to the intent of the parties." *Stolt-Nielsen*, 130 S. Ct. at 1774-75; *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Kilgore v. KeyBank, Nat. Ass'n*, --- F.3d ----, 2012 WL 718344, * 5 (9th Cir. Mar. 7, 2012) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

"A party may compel arbitration under the FAA if it shows that (1) a dispute exists

between the parties; (2) the parties formed a written agreement to arbitrate that 'purports to cover the dispute'; (3) the transaction 'evidenced by the agreement' is related to interstate or foreign commerce; and (4) that the other party failed, neglected, or refused to arbitrate the dispute." *Chronister v. Marks & Harrison, P.C.*, No. 11-688, 2012 WL 966916, *1 (E.D. Va. Mar. 21, 2012) (citing *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir.2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir.1991)). An arbitration agreement governed by the FAA, like the Arbitration Agreement here, is presumed to be valid and enforceable.[7] It is well settled that the party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

Recognizing these principles, numerous courts, including this Court, have enforced similar consumer arbitration agreements, including the same Citibank Card Agreement at issue here. *See, e.g.*, *Garrett*, 3:11-cv-00298, slip. op. [Doc. 55.] (enforcing Citibank's arbitration agreement in putative class action filed against a collection firm); *Koenick v. Citibank (South Dakota), N.A.*, No. 05-1006, 2005 WL 1363982 (D. Md. June 7, 2005) (enforcing Citibank's Arbitration Agreement); *Daugherty v. Experian Information Solutions, Inc.*, No. 11-01285, 2012 WL 752537 (N.D. Cal. Mar. 8, 2012) (same); *Conroy v. Citibank, N.A.*, No. 10-CV-04930-SVW-AJW, slip op. at 5-6 (C.D. Cal. Jul. 22, 2011) (same) (attached to Citibank's Appendix of Authorities); *Yaqub v. Experian Information Solutions, Inc.*, et al., No. CV11-2190-VBF (FFMx), slip op. at 5-6 (C.D. Cal. Jun. 10, 2011) (same) (attached to CCSI's Appendix of Authorities); *Lowman v. Citibank (South Dakota), N.A.*, CV-05 -8097, 2006 WL 6108680, *3-4

---

[7] The FAA preempts any state law impediments to enforcing arbitration agreements according to their terms, even under the guise of generally applicable contract principles. *See Concepcion*, 131 S. Ct. at 1752-53 (states may not superimpose judicial procedures on arbitration); *id.* at 1751 n.7, 1747 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.") (citing *Preston v. Ferrer*, 552 U.S. 346, 353 (2008)); *Stolt-Nielsen*, 130 S. Ct. at 1774 ("[P]arties are 'generally free to structure their arbitration agreements as they see fit.'"); *see also Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984) (striking down California law that sought to insulate certain issues from arbitration).

(C.D. Cal. Mar. 24, 2006); *Egerton v. Citibank, N.A.*, CVO36907DSF, 2004 WL 1057739, *2 (C.D. Cal. Feb. 18, 2004); *Taylor v. Citibank USA, N.A.*, 292 F. Supp. 2d 1333 (M.D. Ala. 2003); *Citibank USA v. Howard*, No. 4:02CV64LN, slip. op. at 7, 2002 WL 34573997 (S.D. Miss. Aug. 30, 2002); *Ingram v. Citicorp Credit Servs., Inc. (USA)*, No. 05-2095 B/An, slip op., 2005 WL 6518077 (W.D. Tenn. July 11, 2005), mag. recomm. adopted at 2005 WL 6518076 (W.D. Tenn. Aug. 25, 2005); *Sesto v. Nat'l Fin. Sys., Inc.*, Case No. 04 C 7768, 2005 WL 6519430 (N.D. Ill. Apr. 25, 2005); *Barker v. Citibank (South Dakota), N.A.*, No. A:03CA-130JN, slip. op., 2003 WL 25943008 (W.D. Tex. May 30, 2003); *Dumanis v. Citibank (South Dakota), N.A.*, No. 07-cv-6070 (CJS), 2007 WL 3253975, at *3 (W.D.N.Y. Nov. 2, 2007); *Eaves-Leonos v. Assurant, Inc.*, 3:07-CV-18-S, 2008 WL 80173, at *6-7 (W.D. Ky. Jan. 8, 2008).

## 2.    The Arbitration Agreement Is Valid And Enforceable Under South Dakota Law.

As stated above, the terms and conditions governing the Account, including the Arbitration Agreement, contain a South Dakota choice-of-law provision. Walters Decl., Ex. 1, p. 9. While the FAA exclusively governs the enforceability of the Arbitration Agreement according to its terms, South Dakota law governs the determination of whether a valid agreement to arbitrate exists.[8] *See Daugherty*, 2012 WL 752537, *4-5 (holding that South Dakota law applied to Arbitration Agreement pursuant to choice-of-law provision in Card Agreement); *Yaqub*, No. CV11-2190-VBF (FFMx), *slip op.* at 3-4 (same); *Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007) (citing numerous cases applying choice-of-law provisions to determine applicable law in evaluating enforceability of arbitration agreements); *accord First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

At the time that Plaintiff was mailed the Arbitration Change-in-Terms, South Dakota law

---

[8] "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances." *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007).

expressly permitted Citibank to change the terms of a credit card agreement by sending out a change-in-terms notice to the cardmember, as follows:

> Upon written notice, a credit card issuer may change the terms of any credit card agreement, if such right of amendment has been reserved, including finance charges, fees and other costs, effective as to existing balances, so long as the card holder does not, within twenty-five days of the effective date of the change, furnish written notice to the issuer that he does not agree to abide by such changes. Upon receipt of such written notice by the issuer, the card holder shall have the remainder of the time under the existing terms in which to pay all sums owed to the issuer or creditor. Use of the card after the effective date of the change of terms, including a change in interest rates, is deemed to be an acceptance of the new terms, even though the twenty-five days have not expired.

*See* former S.D. Codified Laws § 54-11-10.[9] Indeed, the Attorney General of South Dakota issued an opinion expressly finding that the change-in-terms procedure under South Dakota law is a valid means to change a credit card agreement to include an arbitration provision. (Letter Opinion dated May 7, 2002 from Harold H. Deering, Jr., South Dakota Assistant Attorney General, to Richard R. Duncan, South Dakota Director of Banking (the "South Dakota Attorney General Opinion") (attached to CCSI's Appendix of Authorities))[10]

Here, consistent with the terms of the Card Agreement, Citibank notified Plaintiff in October 2001 that it was adding the Arbitration Agreement to their Card Agreements effective November 2001. Walters Decl., ¶¶ 12-19, Exs. 3-7. This method of adopting an arbitration agreement has been routinely upheld by the courts. *See, e.g., Lowman*, 2006 WL 6108680, *3; *Egerton*, 2004 WL 1057739, *3; *Hershler*, No. 2:08-cv-06363-R-JWJ, slip. op. at 5; *Eaves-Leonos*, 2008 WL 80173, *2-6; *Dumanis*, 2007 WL 3253975, *2-3. Importantly, Plaintiff did not exercise her rights to reject the Arbitration Agreement; instead, she continued to use the Account. Walters Decl., ¶¶ 17-19, Ex. 5-9. Thus, Plaintiff accepted the Arbitration Agreement as part of her contract with Citibank. *See Yaqub*, No. CV11-2190-VBF (FFMx), *slip op.* at 3

---

[9] The current § 54-11-10 still authorizes changing the terms of credit card agreements, including with respect to dispute resolution terms.

[10] A copy of the South Dakota Attorney General Opinion is attached to CCSI's accompanying Appendix of Authorities.

("Applying South Dakota law, Plaintiff entered into the Arbitration Agreement when he used the credit card."); *Lowman*, 2006 WL 6108680, *3.[11]

Indeed, under the terms of the Card Agreements and South Dakota law, Plaintiff agreed to the terms of the Card Agreement, including the Arbitration Agreement, by continuing to use the Account following receipt of the Card Agreement. Walters Decl., ¶¶ 10-21, Exs. 1-9.   South Dakota law is consistent with the Card Agreement, providing that the "use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer . . . ."  S.D. Codified Laws § 54-11-9.

Finally, South Dakota, like most states, strongly endorses arbitration.  "If there is doubt whether a case should be resolved by traditional judicial means or by arbitration, arbitration will prevail."  *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 814 (S.D. 2002) ("We have consistently favored the resolution of disputes by arbitration. . . . There is an overriding policy favoring arbitration when a contract provides for it."); *Dinsmore v. Piper Jaffray, Inc.*, 593 N.W.2d 41, 44-47 (S.D. 1999) (enforcing arbitration agreement in preprinted securities account agreement).  This "overriding" public policy also is confirmed in the South Dakota Attorney General Opinion (consistent with *Concepcion*):

---

[11] *See also Boomer v. AT&T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002) (customer accepted terms of contract by failing to follow the non-acceptance instructions in the contract and continuing to use the services); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997) (holding that a computer purchaser, by electing to keep the computer that he purchased rather than returning it within a specified time period, agreed to be bound by an arbitration provision sent to him by the seller); *Herrington v. Union Planters Bank, N.A.*, 113 F. Supp. 2d 1026, 1032 (S.D. Miss. 2000) ("[T]he plaintiffs accepted the terms of the arbitration agreement by continuing to utilize their accounts."); *Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909, 919 (N.D. Tex. 2000) ("Plaintiffs continued to use their First USA credit cards after receipt of the amendments. Therefore, Plaintiffs . . . are contractually bound by the arbitration provision of their Cardmember Agreements."); *Stiles v. Home Cable Concepts*, 994 F. Supp. 1410, 1416 (M.D. Ala. 1998) (enforcing an arbitration provision contained in amendment to a credit card agreement because the plaintiff maintained his account after the effective date of the arbitration clause); *Grasso v. First USA Bank*, 713 A.2d 304, 309 (Del. Super. Ct. 1998) (holding that the plaintiff "unequivocally manifested acceptance" of her cardholder agreement by making purchases and payments on her account).

The purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes by avoiding the expense and delay of extended court proceedings." *Tjeerdsma v. Global Steel Bldgs., Inc.*, 466 N.W.2d 643 (S.D. 1991), quoting *L.R. Foy Constr. Co. v. Spearfish School District*, 341 N.W.2d 383, 388 (S.D. 1983) (Henderson, J., specially concurring) (citations omitted).   South Dakota law, like federal law and the law of most states, encourages private parties to resolve both existing and future disputes by extra-judicial means such as arbitration.   "A strong policy exists favoring the arbitration of disputes where the parties have bargained for this procedure." *City of Hot Springs v. Gunderson's, Inc.*, 322 N.W.2d 8, 10 (S.D. 1982).

(South Dakota Attorney General Opinion at 2.)

Accordingly, under both the FAA and governing South Dakota law, the Card Agreement, including the Arbitration Provision, is binding on Plaintiff and must be enforced.

### 3.   Plaintiff's Claims Fall Squarely Within The Scope Of The Arbitration Agreement.

Once it is determined that the parties have entered into a binding arbitration agreement, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986); *see also McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) (noting the distinction between "broad" clauses that purport to refer to arbitration all disputes arising out of a contract and "narrow" clauses that limit arbitration to specific types of disputes).   Where the clause is broad, as is the case here, there is a heightened presumption of arbitrability such that "'[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Tech.*, 475 U.S. at 650; *accord Fleet Tire Serv. v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997); *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (holding that, where the clause is broad, "then there is a presumption that the claims are arbitrable").

Plaintiff's Arbitration Agreement extends to "[a]ll Claims relating to your account or a prior related account, or our relationship are subject to arbitration . . . ." Walters Decl., Ex. 3

(pp. 1-2, under the heading "**What Claims are subject to arbitration?**"). The instant dispute arises from an adverse action notice received by Plaintiff in connection with her Citibank Account. Complaint, ¶¶ 5-7. Although baseless, this claim clearly "relates to" the Account and Plaintiff's relationship with Citibank. Furthermore, the Agreement clearly covers statutory claims, including Plaintiff's claim under ECOA. Walters Decl., Ex. 3 (pp. 1-2 under the heading "**What Claims are subject to arbitration?**" – encompassing "Claims based on contract . . . *statutory or regulatory provisions*, or any other sources of law . . . .") (emphasis added).

Courts repeatedly have determined that "[c]auses of action premised on statutory rights are subject to contractual arbitration agreements just as are claims under the common law." *Kilgore*, 2012 WL 718344, * 4; *CompuCredit Corp.*, 132 S. Ct. at 669 (the strong federal policy favoring arbitration applies "even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'") (quoting *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("[i]t is by now clear that statutory claims may be the subject of an arbitration."); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) (noting that, in agreeing to arbitrate a statutory claim, a party "does not forgo the substantive rights afforded by the statute [but] submits to their resolution in an arbitral . . . forum"). The "duty [of the courts] to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." *Shearson/Am. Express, Inc.*, 482 U.S. at 226. Courts, including the Supreme Court, have found that ECOA claims are subject to arbitration *See Green Tree Fin. Corp.-Ala.*, 531 U.S. at 80; *see also Waller v. Foulke Management Corp.*, No. 10-cv-06342, 2011 WL 3611405, *5 (D.N.J. Aug. 11, 2011) ("The Supreme Court upheld the application of the FAA to the ECOA."); *Cronin v. Citifinancial Servs., Inc.*, 2008 WL 2933869 *7 (E.D.Pa. July 25, 2008). ("The Supreme Court has upheld the application of the FAA to claims under many important statutory schemes, including ... the [ECOA]."). Simply put, Plaintiff can still attempt to vindicate her rights pursuant to ECOA, but must do so in an arbitral forum on an individual basis.

Finally, Plaintiff cannot avoid arbitration by naming CCSI, a subsidiary of Citibank, as a defendant.   Although CCSI did not issue Plaintiff's Account, the Arbitration Agreement's express terms require arbitration of Plaintiff's claims against affiliated companies of Citibank, such as CCSI:

> **Whose Claims are subject to arbitration?**  Not only ours and yours, but also *Claims made by or against anyone connected with us or you* or claiming through us or you, *such as a* co-applicant, authorized user of your account, an employee, agent, representative, *affiliated company,* predecessor or successor, heir assignee, or trustee in bankruptcy.

Walters Decl., Ex. 3 (at p.2) (underlining added, bolding in original).

Based on the foregoing, the Motion should be granted.

## B.    Plaintiff's Claims Must Proceed To Arbitration On An Individual Basis.

As confirmed in *Concepcion* and its progeny, the Arbitration Agreement must be enforced as written, including its clear language requiring arbitration on an individual basis.  The "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *Concepcion*, 131 S. Ct. at 1748 (citations omitted).  Thus, "parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit *with whom* a party will arbitrate its disputes." *Id.*, 131 S. Ct. at 1748-49 (emphasis added) (citations omitted); *Stolt-Nielsen*, 130 S. Ct. at 1774 ("Underscoring the consensual nature of private dispute resolution . . . parties are 'generally free to structure their arbitration agreements as they see fit.'") (citations omitted).  "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *Concepcion*, 131 S. Ct. at 1752; *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (internal quotation marks and citation omitted); *EEOC*, 534 U.S. at 289 ("[N]othing in the [FAA] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement.").

By using her Account, Plaintiff assented that: "Claims and remedies sought as part of a

class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis." Walters Decl., Ex. 3, (at p.2).  The Arbitration Agreement confers on the arbitrator only the authority to decide individual claims, and not to make any award, or consider any claims, by or relating to any other person.  This language unequivocally demonstrates the parties' intent to arbitrate claims only on an individual basis and "*the FAA requires courts to honor parties' expectations*." *Concepcion*, 131 S. Ct. at 1752 (emphasis added); *Stolt-Nielsen*, 130 S. Ct. at 1776 (holding that the FAA requires that class arbitration may only be ordered when the parties *expressly agree* to class arbitration).

Furthermore, the FAA preempts state laws that attempt to regulate the terms of, and parties to, arbitration or otherwise challenge the arbitration process based on the terms under which the arbitration will take place. *See Concepcion*, 131 S. Ct. at 1753 (abrogating California law invalidating arbitration agreements that contain a class action waiver because the law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in establishing the FAA) (internal quotations and citations omitted); *Kilgore*, 2012 WL 718344, * 13 (we are not free to ignore *Concepcion*'s holding that state public policy cannot trump the FAA when that policy prohibits the arbitration of a "particular type of claim."); *Coneff*, 2012 WL 887598, *2 ("*Concepcion* is broadly written. ... By requiring arbitration to maintain procedures fundamentally at odds with its very nature, a state court impermissibly relies on 'the uniqueness of an agreement to arbitrate' to achieve a result that the state legislature cannot."); *Volt Info. Scis.*, 489 U.S. at 477; *Keating*, 465 U.S. at 16 (striking down California law that sought to insulate certain issues from arbitration).

Indeed, in the time since *Concepcion*, courts across the country have confirmed that, under the FAA, state law challenges to arbitration agreements that contain class action waivers are not viable. *See, e.g., Kilgore*, 2012 WL 718344; *Conroy*, No. 10-CV-04930-SVW-AJW, *slip op.* at 5-6; *Arellano v. T-Mobile USA, Inc.*, No. C-10-5663-WHA, 2011 WL 1842712, *2-3 (N.D. Cal. May 16, 2011); *Day v. Persels & Assocs., LLC*, No. 10-CV-2463-T-33TGW, 2011

WL 1770300, *5 (M.D. Fla. May 9, 2011); *Bellows v. Midland Credit Mgmt., Inc.*, No. 09-CV-1951-LAB, 2011 WL 1691323, at *3 (S.D. Cal. May 4, 2011).

      **C.**     **This Action Should Be Stayed Pending Arbitration.**

Section 3 of the FAA provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Accordingly, CCSI requests that this Court stay the action pending completion of arbitration pursuant to the express terms of the Arbitration Agreement.

## IV.   CONCLUSION

For all of the foregoing reasons, CCSI respectfully requests that the Court grant this Motion and compel arbitration of Plaintiff's claim on an individual basis in accordance with the express terms of the valid and enforceable Arbitration Agreement governing Plaintiff's Account. In addition, this action should be stayed pending completion of arbitration proceedings.

Respectfully Submitted,

CITICORP CREDIT SERVICES, INC.

*/s/*

D. Margeaux Thomas
Virginia State Bar No. 75582
Attorneys for Citicorp Credit Services, Inc.
Miles & Stockbridge P.C.
1751 Pinnacle Drive, Suite 500
McLean, VA 22102
Telephone: (703) 903-9000
Facsimile: (703) 610-8686
Email: *mthomas@milesstockbridge.com*

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Leonard A. Bennett
Susan Mary Rotkis
Attorneys for Donna M. Harrah
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: *lenbennett@clalegal.com*
Email: *srotkis@clalegal.com*

And I hereby certify that I will mail the document by U.S. mail to the following non-filing users:

None.

                                        /s/
                                        D. Margeaux Thomas
                                        Virginia State Bar No. 75582
                                        Attorneys for Citicorp Credit Services, Inc.
                                        Miles & Stockbridge P.C.
                                        1751 Pinnacle Drive, Suite 500
                                        McLean, VA 22102
                                        Telephone: (703) 903-9000
                                        Facsimile: (703) 610-8686
                                        Email: *mthomas@milesstockbridge.com*