# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| DONNA M. HARRAH, on behalf of Herself and others similarly situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>CITICORP CREDIT SERVICES, INC., )<br><br>Defendant. ) | Case No.  **4:12CV27**<br><br>**DECLARATION OF CATHLEEN WALTERS IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION** |

I, CATHLEEN WALTERS, hereby declare and state as follows:

Cathleen Walters, under penalty of perjury, declares:

1.     My name is Cathleen Walters.  I am of suitable age and discretion and competent to testify in court.  I make this Declaration in support of defendant Citicorp Credit Services, Inc.'s Motion to Compel Arbitration and Stay the Action Pending Arbitration.  The statements made by me in this Declaration are true and correct and are based upon my personal knowledge, facts learned during my investigation of this matter, and/or the business records of Citibank.

2.     I am currently Senior Vice-President for Citicorp Credit Services, Inc. ("CCSI"), a subsidiary of Citibank, N.A. ("Citibank") that services the mailing of

DECLARATION OF CATHLEEN WALTERS

credit cards and credit card account agreements, notices (including agreement change-in-terms notices), billing statements, and inserts for Citibank. Prior to July 1, 2011, Citi branded credit cards were issued by Citibank (South Dakota), N.A.; effective July 1, 2011, Citibank (South Dakota), N.A merged into Citibank, N.A. Citibank is a national bank located in Sioux Falls, South Dakota. Prior to its merger with Citibank, N.A., Citibank (South Dakota), N.A., which also was a national bank located in Sioux Falls, South Dakota. Although CCSI is an affiliate of Citibank, it does not issue or own credit card accounts. I have been employed by CCSI, or other Citibank affiliates, continuously since 1996. Since 2000, my responsibilities at CCSI have included creating, maintaining and distributing credit card agreements and change-in-terms notices to Citibank card members.

3.     For the 15 years that I have been employed by either CCSI or other Citibank affiliates, I have had access to the business records of Citibank relating to card member accounts. I have personal knowledge of Citibank's regular office practices and procedures with respect to: (1) the mailing of credit cards and credit card account agreements, notices (including agreement change-in-terms notices), billing statements, and inserts; and (2) quality assurance controls utilized to ensure that such mailings are properly made. For ease of reference, in this Declaration, my reference to Citibank's regular office practices and procedures includes the regular office practices and procedures utilized by Citibank and its affiliates. I am also a duly authorized custodian of records of Citibank, and in that capacity, I have personal knowledge of the records made and maintained by Citibank and its affiliates with respect to card member accounts.

4.     The exhibits to this Declaration are true and correct business records created and maintained by Citibank or its affiliates, in the course of a regularly conducted business activity, and as part of the regular practice of Citibank to create and maintain such records, and I have personal knowledge of each of the types of records described in this Declaration. Certain exhibits have been redacted solely to

DECLARATION OF CATHLEEN WALTERS

protect the confidentiality of account information, such as, among other things, card member account numbers.

5.      I have reviewed the Complaint filed in this action by Plaintiff Donna Harrah, which alleges claims against CCSI relating to Ms. Harrah's Citibank credit card account (the "Account"). Citibank is the issuer of the Account, which can be used world-wide to make purchases and obtain cash advances. As set forth in detail below, based on my review of the records of the Account, I have confirmed that the Account is governed by a binding arbitration agreement (the "Arbitration Agreement"). As discussed below, the Arbitration Agreement was added to the Account in or about October 2001, when Citibank caused to be mailed to its cardholders a "Notice of Change in Terms Regarding Binding Arbitration to Your Citibank Card Agreement" (the "Arbitration Change-in-Terms").

6.      I have personal knowledge of Citibank's regular office practices and procedures regarding the mailing of credit cards and credit card account agreements, notices (including agreement change-in-terms notices), billing statements, and inserts that were in place at the time that the Arbitration Change-in-Terms was sent. I also have personal knowledge of the quality controls utilized by Citibank in October 2001, and at all times thereafter, to ensure that billing statements, notices and inserts were properly sent to card members. I assisted in supervising the mailing of the Arbitration Change-in-Terms, including by personally observing some of the machines that inserted the Arbitration Change-in-Terms into the envelopes containing the billing statements, and by verifying that the correct inserts were stocked and were properly inserted into the correct card member billing statements.

7.      Citibank and its affiliates have at all times utilized an integrated proprietary computer system to perform both billing and mailing functions for Citibank credit card accounts. Pursuant to the regular office procedures in place as of October 2001, Citibank caused a billing statement to be printed each month

DECLARATION OF CATHLEEN WALTERS

(other than months in which no statement may have been required under applicable law), and mailed the statements, as well as any notices and inserts, to the addresses of card members on file in Citibank's computerized database.

8.      Pursuant to Citibank's regular office practices and procedures in place in October 2001, various quality assurance controls were utilized in order to ensure that cardmember addresses in the computerized database were current and accurate. When an updated address form was received from a cardmember, CCSI would immediately update the address in the database. In addition, every three years, CCSI submitted the database to the United States Postal Service's National Change of Address registry for analysis in order to verify the accuracy of the cardmember addresses in the database. CCSI also monitored any mailings that were returned by as undeliverable by the postal service, and would include a note in cardmembers' computerized account records when mailings were returned as undeliverable. Any cardmember whose account record indicated that mailings had been returned as undeliverable was removed from the Arbitration Change-in-Terms until that cardmember's correct address could be obtained and verified.

9.      In addition, pursuant to regular office practices and procedures in place in October 2001, Citibank employed various quality assurance controls to ensure that the correct Citibank cardmembers received the correct notices and inserts (including change-in-terms notices) that were intended to be included in their periodic billing statements. Based on various factors related to the cardmember's account profile, Citibank assigned codes to each cardmember account identifying the type of notices or inserts a cardmember was intended to receive with his or her billing statement. Using the proprietary computer system, CCSI then prepared billing statements each month with the appropriate notices and/or inserts included with the statements. During the insertion process, personnel randomly selected billing statements and physically inspected the contents of the statements to ensure that the appropriate notices and inserts were being placed in the correct

-4-

DECLARATION OF CATHLEEN WALTERS

cardmember billing statements.

**A.     Ms. Harrah's Account**

10.     Like any other credit card account, Ms. Harrah's Account is subject to written terms and conditions that are reflected in a Card Agreement, as amended from time to time (the "Card Agreement"). Attached hereto as Exhibit  is a copy of the Card Agreement that was mailed to Ms. Harrah on or about October 26, 1999 after Ms. Harrah contacted Citibank regarding the terms governing the Account. Attached hereto as Exhibit 2 is a computer screen printout of a note made on the Account that reflects Ms. Harrah's request for a Card Agreement.

12.     In October 2001, Citibank caused to be mailed to Ms. Harrah the Arbitration Change-in-Terms with her October 2001 periodic statement for the Account. A copy of the Arbitration Change-in-Terms for the Account that was mailed to Ms. Harrah is attached hereto as Exhibit 3 to this Affidavit. A copy of the transaction detail for the October 2001 billing statement for the Account is attached hereto as Exhibit 4. The October 2001 billing statement included the following special message:

> PLEASE SEE THE ENCLOSED CHANGE IN TERMS NOTICE FOR IMPORTANT INFORMATION ABOUT THE BINDING ARBITRATION PROVISION WE ARE ADDING TO YOUR CITIBANK CARD AGREEMENT.

See Exhibit 4 at p. 1.

13.     Furthermore, in November 2001, a monthly periodic billing statement for the Account was mailed to Ms. Harrah, which included the following follow-up message:

> WITHIN THE LAST 30 DAYS YOU SHOULD HAVE RECEIVED AN IMPORTANT NOTICE ABOUT ADDING BINDING ARBITRATION TO YOUR CITIBANK CARD AGREEMENT. IF YOU WOULD LIKE ANOTHER COPY PLEASE CALL THE CUSTOMER SERVICE NUMBER LISTED ABOVE.

DECLARATION OF CATHLEEN WALTERS

A copy of the transaction detail for the November 2001 billing statement is attached hereto as Exhibit 5.

14.    Citibank recorded the mailing of the Arbitration Change-in-Terms to Ms. Harrah in its computer system records for her Account.  A copy of the printout of the computer screen from the records for Ms. Harrah's Account that reflects that the Arbitration Change-in-Terms was sent to Ms. Harrah is attached hereto as Exhibit 6 ("ARBITRATION CHANGE IN TERMS NOTICE INSERT").

15.    As described above, it was, and is, Citibank's regular practice to include a note in card members' computerized account records when billing statements, inserts or notices are returned as undeliverable by the postal service.  In addition, any card member whose account record indicated that mailings had been returned as undeliverable was removed from the Arbitration Change-in-Terms until that card member's correct address could be obtained and verified.  I have reviewed Citibank's records for the Account and there is no record that the postal service returned either the October or November 2001 billing statements for the Account as undeliverable.  In addition, if the mail for Ms. Harrah's address had been returned by the postal service as undeliverable for two consecutive months, it was Citibank's regular practice to discontinue mailing billing statements until a proper address was obtained and verified.  Billing statements for November and December 2001, and January and February 2002, were sent to Ms. Harrah.

16.    Ms. Harrah, like other recipients of the Arbitration Change-in-Terms, was permitted, by taking certain steps as set forth in the Arbitration Change-in-Terms, to opt out of the Arbitration Agreement.  Under the Arbitration Change-in-Terms, if Ms. Harrah objected to the Arbitration Change-in-Terms, she could opt out by submitting a written request for exclusion to the address set forth in the Arbitration Change-in-Terms within a specified time period.

17.    Ms. Harrah did not opt out of the Arbitration Change-in-Terms.  I can determine this because it was Citibank's regular practice to include a note in the

DECLARATION OF CATHLEEN WALTERS

computerized account records of those card members who chose to opt out.  The records for Ms. Harrah's Account do not reflect any such note, and there is no indication in the Account records that Ms. Harrah ever notified Citibank to refuse to accept the terms of the Arbitration Change-in-Terms.

18.    In addition, it was Citibank's regular practice to indicate in the computerized account records whether a card member's account is subject to arbitration.  Attached hereto as Exhibit 7 is a copy of printout of the computer screen that shows the arbitration indicator for Ms. Harrah's Account.  That indicator is marked "Y."  This means the Account is subject to arbitration.  If Ms. Harrah had opted out of the Arbitration Change-in-Terms, this field would show an "N."  The computer system was programmed to place an "N" in this field when an opt out was noted on the system during the opt out period for the Arbitration Change-in-Terms.

19.    The Arbitration Change-in-Terms also provided that the Arbitration Agreement would become effective on the day after the Statement/Closing date indicated on Ms. Harrah's November 2001 billing statement.  See Exhibit 3 at 1.  The Statement/Closing date was November 15, 2001.  See Exhibit 5.  Thus, the Arbitration Agreement became effective on November 16, 2001.  Ms. Harrah continued to use Account after the effective date of the Arbitration Agreement.

20.    In February 2005, Citibank mailed to Ms. Harrah a "Notice of Change-in-Terms, Right to Opt Out, and Information Update" (the "February 2005 Change-in-Terms") for the Account.  The February 2005 Change-in-Terms made certain amendments to the Arbitration Agreement, removing JAMS as an arbitration provider and revising the severability clause.  A copy of the February 2005 Change-in-Terms for Ms. Harrah's Account is attached hereto as  Exhibit 8.  A note was included in the February 2005 billing statement alerting Ms. Harrah to the February 2005 Change-in-Terms; a copy of the transaction detail for the February 2005 billing statement is attached hereto as Exhibit 9.  As with the Arbitration Change-

DECLARATION OF CATHLEEN WALTERS

in-Terms, Ms. Harrah had the opportunity to opt out of the changes to the arbitration provision (not the Arbitration Agreement itself), but did not do so. Instead, Ms. Harrah continued to use and make payments on her Account after receiving the February 2005 Change-in-Terms.

21.   Ms. Harrah's Account remains open and active as of the date of this Declaration.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 30 day of March 2012, at Queens, New York.

_____
Cathleen Walters

DECLARATION OF CATHLEEN WALTERS